No. 95,133

In the Matter of DAVID R. GILMAN, *Respondent*.

(126 P.3d 1115)

Opinion filed February 3, 2006.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

*Steven R. McConnell*, of McConnell & McMahon, argued the cause for respondent, and *David R. Gilman*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against David R. Gilman, of Overland Park, an attorney admitted to the practice of law in Kansas. The formal complaint filed against the Respondent alleged violations of KRPC 8.4(d) (2005 Kan. Ct. R. Annot. 504) (misconduct); KRPC 3.4(d) (2005 Kan. Ct. R. Annot 467) (fairness to opposing party and counsel); KRPC 3.5(c) (2005 Kan. Ct. R. Annot. 471) (impartiality and decorum to the tribunal); and KRPC 8.4(g) (2005 Kan. Ct. R. Annot. 504) (misconduct), but as will be clarified in the opinion, the hearing panel and this court found the evidence was sufficient only as to KRPC 8.4(d).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The panel made the following findings of fact and conclusions of law together with its recommendations to this court:

## "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

"1.    David R. Gilman (hereinafter 'the Respondent') is an attorney at law, Kansas Attorney Registration No. 05318. His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Overland Park, Kansas . . . . The Respondent was admitted [to the] practice of law in the state of Kansas on June 26, 1957.

"2.    On December 9, 2003, at 10:00 a.m., the Respondent appeared in the Lenexa Municipal Court, with his client, Laurie Brandel, before the Honorable Kate Baird. The Court had previously scheduled Ms. Brandel's case for trial at

that time. Because the Court had a heavy docket, the Court did not call Ms. Brandel's case until 10:50 a.m.

"3.   When the Court called Ms. Brandel's case, the Respondent and his client approached the bench and the Respondent requested a continuance. [Here, footnote 1 from the final hearing report stated: 'While the Respondent, in his letter to the disciplinary investigator in this case, indicated that the only purpose for his appearance that day was to request and obtain a continuance, during the disciplinary hearing, the Respondent testified that he intended to try Ms. Brandel's case that day, if it had been called at 10:00 a.m.'] The Respondent explained that he was also scheduled to appear in Montgomery County, Kansas. At that time, Judge Baird smelled an odor of alcohol coming from the Respondent and noticed that the Respondent's speech was slurred. Judge Baird believed that the Respondent was impaired because of his use of alcohol.

"4.   Because the Respondent appeared to be impaired, the Court granted the Respondent's request for a continuance and requested that the Respondent step to the bench without his client. Judge Baird told the Respondent that she thought she smelled alcohol on his breath. The Respondent told Judge Baird that he was fine and left the courtroom.

"5.   In order to discuss this matter further with the Respondent, Judge Baird took a recess from calling the cases remaining on the docket, left the courtroom, and entered the Court Clerk's area. Judge Baird approached the Respondent and asked him to come to her office.

"6.   The Respondent came into Judge Baird's office without his client. Judge Baird explained that she was concerned that he had appeared in court under the influence of alcohol and that she was also concerned about his ability to drive a vehicle. Based upon her concerns, Judge Baird asked the Respondent to take a preliminary breath test. The Respondent agreed.

"7.   According to the Respondent, Judge Baird was shocked at the results of the preliminary breath test. Based upon the results of the preliminary breath test, Judge Baird directed the Respondent to not drive from the Courthouse. Additionally, Judge Baird told the Respondent that he needed to obtain a continuance of his case scheduled in Montgomery County, Kansas. The Respondent agreed to call someone and get a ride. He also agreed to seek a continuance of his case pending on Montgomery County, Kansas. Thereafter, Judge Baird observed the Respondent talking on the telephone.

"8.   Apparently, the Respondent called his office and informed his secretary that he may get arrested for driving under the influence of alcohol. According to the Respondent's testimony, the Respondent's secretary told the Respondent to call her if he was arrested. The Respondent did not arrange for someone to pick him up from the Lenexa Municipal Court, nor did he call to seek a continuance of his case in Montgomery County, Kansas.

"9.   The Respondent testified that he went out to his car and administered field sobriety tests to himself. He testified that he 'counted backwards and . . . said the ABC's.'

"10. The Respondent left the Lenexa Municipal Court driving his car. The Respondent drove to Montgomery County, Kansas, for his scheduled court appearance apparently without incident.

"11. On December 12, 2003, Judge Baird filed a complaint with the Disciplinary Administrator's office. Frank Austenfeld investigated Judge Baird's complaint. On January 29, 2004, the Respondent wrote to Mr. Austenfeld and responded to Judge Baird's complaint. In his letter, the Respondent stated:

'I am sorry that I have not responded to your letter, however, I have been in contact with Don Zemites and have been talking with him.

'I agree that I had several drinks of whiskey [here, footnote 2 from the final hearing report stated: "Despite the fact that the Respondent stated in his letter to Mr. Austenfeld that he had had several drinks of whiskey, the Respondent testified that he had had only two shots of whiskey. The Respondent testified that after leaving the Wyandotte County, Kansas, courthouse earlier that morning, he stepped into a hole and his socks and shoes became wet. The Respondent testified that he drove home, changed his socks and shoes, and had two shots of whiskey before he traveled to the Lenexa Municipal Court."] before going to Judge Baird's Court with my client. The only purpose of my court appearance was to obtain a continuance in the case. My client had no problem with either me or my conduct.

'I do not believe that the PBT was accurate and that a more accurate reading would be .05 or .06. Needless to say I am embarrassed about this and it will not happen again.

'I talked with Don Zemites today and I am hoping to get together with him next week.'

"12. On February 12, 2004, the Respondent appeared in the Lenexa Municipal Court in behalf of a client whose case had been set on the *pro se* docket. At that time, the Respondent met with Ann Henderson, prosecutor. Ms. Henderson detected an odor of alcohol on the Respondent's breath.

"13. Ms. Henderson informed the Respondent that she smelled alcohol on his breath. Ms. Henderson told the Respondent that she was concerned about his ability to drive a car. The Respondent denied that he smelled of alcohol but told Ms. Henderson that he had taken his medication with a beer that morning. [Here footnote 3 from the final hearing report stated: 'At the hearing on this matter, the Respondent denied having a beer with his medication. Rather, the Respondent testified that he had had a half a beer with his medication.']

"14. Ms. Henderson requested that the Respondent submit to a preliminary breath test. The Respondent agreed. The preliminary breath test indicated that the Respondent had alcohol in his system. [Here, footnote 4 from the final hearing report stated: 'The facts contained in paragraphs 12, 13, and 14 are based on the complaint lodged by R. Ann Henderson. At the hearing on this matter, the Respondent did not rebut the information contained in her complaint and admitted at the hearing.']

## "CONCLUSIONS OF LAW

"1.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 8.4(d). 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in conduct that is prejudicial to the administration of justice when he appeared in court after having consumed several drinks of whiskey. Because the Respondent appeared to be impaired, Judge Baird continued Ms. Brandel's trial and had to call a recess to address the Respondent's condition.

"2.   In addition to alleging that the Respondent violated KRPC 8.4(d), the Deputy Disciplinary Administrator alleged that the Respondent violated KRPC 3.4(d), KRPC 3.5(c), and KRPC 8.4(g). The Hearing Panel concludes that the Deputy Disciplinary Administrator failed to present clear and convincing evidence that the Respondent violated those rules.

"3.   KRPC 3.4(c) provides, in pertinent part, as follows:

'A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.'

The Deputy Disciplinary Administrator argued that Respondent knowingly disobeyed an order of the Court when he drove his vehicle from the Lenexa Municipal Court. The Hearing Panel concludes that Judge Baird did not have the authority to order the Respondent to refrain from driving his vehicle. Accordingly, Judge Baird's direction, ordering the Respondent to refrain from driving his vehicle, was not a valid obligation of the tribunal. As such the Hearing Panel concludes that the Respondent did not violate KRPC 3.4(d).

"4.   Lawyers shall not 'engage in undignified or discourteous conduct degrading to a tribunal.' KRPC 3.5(d). The Deputy Disciplinary Administrator argued that by appearing in court impaired by the use of alcohol, the Respondent engaged in 'undignified or discourteous conduct.' The Hearing Panel agrees that appearing in Court after having consumed 'several' drinks of whiskey, the Respondent engaged in 'undignified' conduct. However, the Respondent's 'undignified' conduct was not degrading to the tribunal. No testimony was presented that he was disrespectful or discourteous to the Court. Accordingly, the Hearing Panel concludes that the Respondent did not violate KRPC 3.5(d).

"5.   Finally, the Deputy Disciplinary Administrator alleged that the Respondent engaged in 'other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). It is the position of the Hearing Panel that the 'catchall' provision of KRPC 8.4(g) does not apply if another provision of the Kansas Rules of Professional Conduct does apply. As such, because the Hearing Panel concludes that KRPC 8.4(d) applies, the Hearing Panel concludes that the provisions of KRPC 8.4(g) do not apply.

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to the legal profession to maintain personal integrity.

"*Mental State.* The Respondent knowingly violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused potential injury to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on six occasions.

"On December 17, 1996, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.1, KRPC 1.2, and KRPC 8.4, in case number A6518. In that case, the Respondent filed an appeal without his client's authorization and failed to appear in court to discuss the filing of the appeal.

"On January 28, 1992, the Disciplinary Administrator informally admonished the Respondent for failing to provide diligent representation, in violation of MRPC 1.3, in case number B5022. In that case, the Respondent failed to appear in court for a scheduled trial.

"On March 14, 1992, a Hearing Panel of the Kansas Board for Discipline of Attorneys held a hearing regarding case number B4882. In B4882, the Respondent failed to appear in court for trial and again for sentencing. Following the hearing, the Hearing Panel issued its Final Hearing Report, recommending that the Respondent be censured. On December 6, 1991, the Court issued its opinion censuring the Respondent for having violated MRPC 1.3, MRPC 1.4, and MRPC 8.4. *In re Gilman*, 249 Kan. 773 (1991).

"On October 18, 1988, the Disciplinary Administrator informally admonished the Respondent in case number B4171, for neglecting a client matter.

"On December 4, 1987, a Hearing Panel of the Kansas Board for Discipline of Attorneys held a hearing regarding case number W3970. Following the hearing, the Hearing Panel issued a report recommending that the Disciplinary Administrator impose an informal admonition. On April 15, 1988, the Disciplinary Administrator imposed an informal admonition for neglecting a case.

"On July 7, 1982, the Disciplinary Administrator informally admonished the Respondent for having violated DR 7-110(A), in case number W2490. The Respondent made a loan to a judge at the judge's request. The Respondent and the judge had previously been law partners and were close personal friends.

"Refusal to Acknowledge Wrongful Nature of Conduct. During the Respondent's testimony he failed to acknowledge the wrongful nature of his conduct. The Respondent minimized, rationalized, and excused his conduct. The Hearing Panel finds the Respondent's lack of remorse to be an aggravating factor in this case.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1957. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of 46 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Dishonest or Selfish Motive. Dishonesty and selfishness were not motivating factors in this case.

"Remoteness of Prior Offenses. The discipline previously imposed is remote in time and in character to the misconduct in this case.

## "RECOMMENDATION

"The Respondent recommended that the allegations that the Respondent violated the Kansas Rules of Professional Conduct be dismissed, arguing that the rules which govern our profession do not prohibit attorneys from appearing in court after having consumed alcohol.

"While the Hearing Panel acknowledges that none of the Kansas Rules of Professional Conduct specifically prohibit attorneys from appearing in court after having consumed alcohol, the rules prohibit many of the consequences which may be expected from appearing in Court after consuming alcohol. When the Respondent appeared in Court after having consumed several drinks of whiskey, he caused the Court to grant his request for a continuance and recess so that the question of his impairment could be further examined and the rights of his client protected. The Respondent's conduct interfered with the administration of justice and violated KRPC 8.4(d). Accordingly, the Hearing Panel declines to dismiss the allegations as requested by the Respondent.

"The Deputy Disciplinary Administrator recommended that the Respondent be suspended from the practice of law. The Deputy Disciplinary Administrator based his recommendation on the serious nature of the misconduct and the fact that the Respondent has been previously disciplined in six cases. While the Re-

spondent's conduct is serious and requires appropriate discipline, the Hearing Panel does not believe that the Respondent's conduct warrants a suspension from the practice of law. Since the only consequences of the drinking appear to have been to cause the Court to grant a continuance which it may not have otherwise granted, the Hearing Panel does not believe it appropriate to discipline on the basis of possible consequences which did not occur.

"The Hearing Panel is concerned, however, that the Respondent does not appreciate the seriousness of his misconduct. The Respondent acknowledged no wrongdoing and made no promises of reform, other than in his initial written response to the investigator. No evidence was presented that the Respondent did, in fact, contact Don Zemites [of the Kansas Impaired Lawyers Assistance Program] or seek any professional help. Because the Respondent does not appear to appreciate the serious nature of his misconduct, the Hearing Panel believes that some form of public discipline is appropriate. Given the remote nature of the Respondent's prior discipline, the Hearing Panel finds it of limited relevance and recommends that censure, to be published in the Kansas Reports, is the appropriate discipline in this case.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

Respondent did not file exceptions to the final hearing report of the panel. Accordingly, pursuant to Supreme Court Rule 212(d) (2005 Kan. Ct. R. Annot. 297), the panel's findings of fact are deemed admitted. These findings of fact are supported by clear and convincing evidence and also support the panel's conclusions of law. We adopt the findings and conclusions of the panel.

A majority of this court agrees with the panel's recommendation for discipline in this case. However, a minority of this court would discipline Respondent by imposing a suspension of his license to practice law in this state.

All members of the court express the same concerns of the panel in this case: Respondent does not appreciate the seriousness of his misconduct and the record supports the conclusion that Respondent minimized, rationalized, and excused his drinking misconduct.

We note that Respondent appeared in the Lenexa Municipal Court on December 9th with "an odor of alcohol coming from the Respondent" and that his "speech was slurred." The municipal judge believed Respondent to be impaired because of his use of alcohol.

After granting a continuance to Respondent's client, the court took a recess to address Respondent's condition. Respondent was asked to take a preliminary breath test which Respondent submitted to. The court was shocked with the result of the test and directed Respondent not to drive from the courthouse. Notwithstanding this admonition, Respondent administered himself a field sobriety test and left in his automobile after he passed his test.

Approximately 2 months later, Respondent was present in the same courthouse when the prosecutor smelled alcohol on his breath. She confirmed the presence of alcohol based upon an agreed to preliminary breath test. At the time, the prosecutor was concerned about Respondent's ability to drive a car. The similarity of the two charges adds weight to the court's concern that Respondent may have a serious alcohol problem that should be addressed.

There is no indication in the record that Respondent has taken any action to address the above concern. Instead, Respondent demonstrates no remorse, acknowledges no wrongdoing, and has taken no steps to address what may be a serious problem. Yet, the record supports the findings and conclusions by clear and convincing evidence that Respondent violated the provisions of KRPC 8.4(d) [2005 Kan. Ct. R. Annot. 504]: "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Respondent engaged in such conduct when he appeared in court after having consumed several drinks of alcohol. The court had to continue the case Respondent was appearing on because the court concluded that Respondent was impaired by reason of the alcohol. Additionally, a recess had to be called to address the condition of Respondent.

Thus, in addition to imposing the panel's recommended discipline, this court urges Respondent to contact Mr. Don Zemites, Executive Director, Kansas Impaired Lawyers Assistance Program, for advice and help with what may be a serious problem for Respondent. See Supreme Court Rule 206 (2005 Kan. Ct. R. Annot. 268). Based upon the discipline imposed, this court is not in a position to order Respondent to seek the above help. The recommendation, however, is made for the benefit of Respondent, his

clients, the courts in which he practices, and his continued practice of law in this state.

IT IS THEREFORE ORDERED that Respondent, David R. Gilman, be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2005 Kan. Ct. R. Annot. 247) for violation of KRPC 8.4(d).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of these proceedings be assessed to Respondent.